1
2
3
4
5
6
7              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9  APULENT, LTD.,
10                 Plaintiff,
                                                Case No. C14-637RSL
11         v.
12 JEWEL HOPSITALITY, INC.,                     ORDER GRANTING MOTION FOR
                                                PARTIAL SUMMARY JUDGMENT
13                 Defendant.

14

15     This matter comes before the Court on "Defendant's Motion For Summary Judgment."
16 Dkt. # 17.  Having reviewed the memoranda and exhibits submitted by the parties, and the
17 arguments presented at the January 12, 2015 hearing on this motion, the Court finds as follows.

18                              **I. BACKGROUND**

19     Plaintiff and defendant operate in the hospitality industry, providing catering and event
20 planning services to the Seattle/Bellevue area.  Dkt. # 17 at 1.  For a number of years, plaintiff
21 leased a facility on Shilshole Bay in Seattle, WA owned by the Ballard Elks.  Dkt. # 22 (Roberts
22 Decl.) ¶¶ 1, 4.  Operating a business called the Shilshole Bay Beach Club, plaintiff offered the
23 facility as a venue for social, corporate and non-profit events.  Id. ¶ 4.  Plaintiff's efforts to
24 market this venue included the use of two photographs of the venue, known as the "His and Her
25 Event View" and the "Bay View" images (the "Images" at issue), in plaintiff's online and print
26 advertising.  Id. ¶¶ 17-23; Dkt. # 9-3 (Am. Compl. Exh. C) (depicting "His and Her Event View"

27 ORDER GRANTING MOTION FOR
28 PARTIAL SUMMARY JUDGMENT - 1

image); Dkt. # 9-4 (Am. Compl. Exh. D) (depicting "Bay View" image).  Plaintiff claims that it had exclusive rights to the Images prior to January 2014.  Dkt. # 22 ¶ 14; Dkt. # 20 at 7 n. 1.  Plaintiff registered copyright in the Images in April 2014.  Dkt. # 9-1 (Am. Compl. Exh. A); Dkt. # 9-2 (Am. Compl. Exh. B).

In December 2013, plaintiff's tenancy of the Ballard Elks' facility ended, Dkt. # 20 at 4, and defendant took over the facility in January 2014, Dkt. # 19 (Evans Decl.) ¶¶ 7-8.  Plaintiff never sold assets associated with the Shilshole Bay Beach Club (including its rights to the Images) to defendant or to the Ballard Elks, although at some point a sale was discussed.  Dkt. # 20 at 7; Dkt. # 22 ¶¶ 7-8.  Defendant opened a new business at the venue called "Beach Club At Shilshole Bay" (which has since been renamed), and on January 10, 2014 posted the Images on its website in order to promote the venue.  Dkt. # 21-5 (Resp. to Interrogatories) at 9.  Defendant also posted ten other images of the venue on its website, which are not the subject of the current dispute.  Dkt. # 19 ¶ 9.

Plaintiff brought this action on April 26, 2014, seeking to recover actual damages sustained in connection with defendant's infringement of plaintiff's copyright in the Images along with "all profits attributable" to the infringement.  Dkt. # 1 (Compl.).  Plaintiff also sought a permanent injunction prohibiting any further infringement related to the Images.  Id.  Defendant removed the Images from its website on April 30, 2014.  Dkt. # 21-5 at 9.  Plaintiff is also pursuing other claims against defendant and the Ballard Elks in King County Superior Court related to defendant's efforts to open a new business at the venue, including (among other things) trademark infringement, unfair competition and conversion.  Dkt. # 20 at 4.  At the January 12, 2015 hearing on this motion, defendant suggested that plaintiff would try to introduce the Images as evidence in the state court action, but asserted that there was no material overlap between that state court action and the action before this Court.

Defendant has moved for summary judgment on plaintiff's claim to "indirect profits" stemming from defendant's alleged infringement, Dkt. # 17 at 9, arguing that under Ninth

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

Circuit law plaintiff's evidence is insufficient to establish the necessary causal connection between the alleged infringement and defendant's revenues during the infringement period (January-April 2014), id. at 6-10.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail by pointing out that the nonmoving party lacks evidence to support its case. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. Id. "The mere existence of a scintilla of evidence in support of the nonmoving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable finder of fact could find for the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).

## III.  DISCUSSION

**A. Indirect Profits for Copyright Infringement in the Ninth Circuit**

Under 17 U.S.C. § 504(b), a copyright owner "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." In establishing the infringer's profits, "the copyright owner is required to present proof only of

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. In the Ninth Circuit, to survive summary judgment, a copyright infringement plaintiff seeking to recover indirect profits "must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement." Mackie v. Rieser, 296 F.3d 909, 911 (9th Cir. 2002). Awarding indirect profits is inappropriate where "they are only remotely or speculatively attributable to the infringement." Id. at 914.

Two cases in particular (both authored by Circuit Judge Margaret M. McKeown) guide this Court's analysis. In Mackie, plaintiff was an artist who specialized in creating public works. Id. at 911. Defendant Seattle Symphony Orchestra Public Benefit Corporation (the "Symphony") contracted with defendant Rieser, a graphic artist, to help design a direct-mail subscription campaign. Id. at 912. Rieser created a collage of combined images which incorporated plaintiff's works into the design; the Symphony, in turn, incorporated Rieser's artwork into a 24-page promotional brochure for a concert series that was mailed to approximately 150,000 individuals. Id. Plaintiff sued for copyright infringement seeking recoupment of profits that the Symphony generated during the advertised season and future seasons. Id. at 912-13. The district court granted the Symphony's motion for partial summary judgment on the issue of indirect profits. Id. at 911.

The Ninth Circuit affirmed the district court's ruling on the grounds that plaintiff had failed to proffer "sufficient non-speculative evidence" of the causal relationship between the Symphony's profits and the infringement. Id. at 916. The court emphasized that plaintiff's expert had not seen how it would be possible to establish a causal link between the Symphony's infringing use of plaintiff's work and any revenues generated by its use of Rieser's collage in its advertising materials. Id. The court noted that subscribers to the concert series could have been motivated by any number of factors completely unrelated to the artwork in question, such as the

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

Symphony's reputation or the concert series' conductor.  Id.  Finally, the court rejected a supplemental declaration from plaintiff's expert (which the Court felt contradicted his earlier testimony) that proffered that defendants' infringement likely contributed to Symphony revenues because the Symphony had expected to see a 1.5% return rate for direct-mailing its brochures:

> Even if such an aspirational yield percentage could be applied to determine how many people subscribed because of the brochure, such a rudimentary analysis cannot determine how many of those individuals subscribed *because of Rieser's work*. The thread is even more attenuated because the artwork was but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself.  Rank speculation of that sort will not allow a copyright holder to survive a summary judgment motion on his claim for indirect profits.

Id. (emphasis in original).

In Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit again addressed what sufficed to establish a causal connection between copyright infringement and an infringer's profits.  In Polar Bear, defendant Timex Corporation used copyrighted images from a promotional film produced by plaintiff Polar Bear Productions to boost sales, and plaintiff sought actual damages and indirect profits under § 504(b).  Id. at 704, 707 n. 5.  The infringing uses took three forms: (i) a tape playing on a loop at trade shows; (ii) a promotional campaign associated with the soft drink Mountain Dew that contained a still image from the film in a booklet; and (iii) videos used to train salespeople at a large national retailer.  Id. at 704, 713.

As part of its analysis, the Ninth Circuit articulated the parties' burdens in indirect profits claims.  The court held that a copyright plaintiff had to show a causal nexus between the alleged infringement and the defendant's gross revenue, and that once the causal nexus was shown, the infringing defendant bore the burden of apportioning the profits that were not the result of infringement.  Id. at 711.  The court emphasized, however, that a plaintiff could only seek indirect profits arising from the infringement, and that it therefore had to identify a "revenue stream" bearing a "legally significant relationship to the infringement."  Id. (noting that plaintiffs had to do more than "toss up an undifferentiated gross revenue number.").

The court held that plaintiff had provided sufficient evidence to meet its burden as to the

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

trade shows and the Mountain Dew campaign.  The latter had offered consumers the opportunity to purchase a Timex watch at a discounted price by ordering through a booklet that contained a still image from the copyrighted film.  Id. at 712.  The court held that plaintiff had demonstrated a sufficient causal nexus between infringing conduct and revenues through evidence that (a) the Mountain Dew booklet had contained an advertisement featuring the infringing material; (b) consumers who had ordered defendant's watches through the booklet would have seen the infringing advertisement; and (c) defendant had profited from this promotion.  Id. at 713.

Ultimately, however, the Court vacated the jury's award for indirect profits because plaintiff had proffered only speculative evidence for the "overwhelming bulk" of its indirect profits claim.  Id.  Plaintiff had argued that defendant's profits from retail sales of its watches had increased because defendant's use of infringing advertising at trade shows had increased the watches' "brand prestige."  Id.  The court rejected this argument on the grounds that plaintiff had provided no evidence establishing "that the infringement may have actually influenced the purchasing decisions of those that bought Timex's watches at retail stores or other outlets."  Id. at 714-15.  The court noted that "[a]ctual retail purchasers were never exposed to the infringing images from the trade shows," and that there was no evidence that "vendors at the trade shows somehow transmitted enthusiasm to retail customers."  Id. at 715.  The Court emphasized that "[w]hile there is no requirement that [plaintiff] put Timex customers on the witness stand to testify that they purchased watches because of [the infringement] . . . a copyright plaintiff must present a modicum of proof linking the infringement to the profits sought."  Id. (internal citation omitted).

**B. Application To This Case**

### (i) Clarifying the Burden

As a preliminary matter, the Court addresses several arguments raised by the parties about what plaintiff's evidence must show.  Plaintiff must identify revenues reasonably related to the alleged infringement, which here are defendant's revenues from bookings at the Beach Club at

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

Shilshole Bay during the alleged infringement period.  Furthermore, plaintiff must provide sufficient non-speculative evidence for a reasonable fact-finder to conclude that defendant's infringement actually generated at least part of said revenues.  It is clear that under Mackie and Polar Bear a plaintiff may not seek indirect profits merely on the grounds that infringing conduct had the "capability" to influence purchasing decisions, as plaintiff here has suggested, Dkt. # 20 at 16.  See Polar Bear, 384 F.3d at 708 ("causal connection" requirement is "akin to tort principles of causation and damages.").

Additionally, plaintiff need not show that defendant's infringement was the exclusive or primary cause for the revenues generated during the infringement period, or that it was even the exclusive or primary reason for a customer's decision to contract for defendant's services.  There is no such indication in Mackie or Polar Bear, and such a rule would seem inconsistent with the Mackie court's holding that plaintiffs need only show that the alleged infringement "at least partially" contributed to profits, 296 F.3d at 911.  While the Mackie court noted that subscribers for the Symphony's concert series in that case could have subscribed for any number of reasons, 296 F.3d at 916, the point that the court was making was that there was no "concrete" evidence that the infringing content in the Symphony's brochure played any role in any subscriber's decision, and that this could not be assumed given the existence of other reasons for someone to subscribe.

Finally, plaintiff must establish a causal link between defendant's revenues and the Images at issue, and not simply a link between defendant's revenues and its website.  Plaintiff argues that its evidence establishes that defendants' customers became interested in the venue because of the photographs on defendant's website, and contends that because defendant's "infringing website" therefore ultimately led to bookings, plaintiff has met its burden of establishing a causal connection between defendant's infringement and its revenues.  Dkt. # 20 at 15 (emphasizing that the "infringing website" clearly played a role in "consummating sales.").  Defendant contends that plaintiff has presented insufficient evidence of a causal connection

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

between its revenues and the two specific Images at issue.

To the extent that plaintiff argues that it meets its burden by merely connecting the "infringing website" to sales, the Court disagrees.  Plaintiff cites Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505 (9th Cir. 1985) in support of this position.  In Frank Music, the court held that plaintiff showed a causal link between a hotel and casino's revenues and a musical revue that played at the hotel's theater, where only six minutes of the 100-minute revue consisted of infringing content.  Id. at 510.  Apulent emphasizes that the court did not require plaintiff to isolate those six minutes as generating indirect profits, Dkt. # 20 at 18, and thus argues that it need only show whether the larger infringing item led to profits (there the revue, here the website), and not its "infringing part" (there the infringing six minutes, here the two copyrighted Images).

However, the Mackie court rejected the notion that a plaintiff could meet its burden merely by showing that a combination of infringing and non-infringing content generated revenue.  Even had the plaintiff in Mackie shown that the brochure containing infringing content had led to subscriptions, the "rudimentary analysis" proposed by plaintiff's expert would still not have determined how many people subscribed "*because of Rieser's work*."  296 F.3d at 916 (emphasis in original).  Clearly, the burden still fell on plaintiff to show that the actual infringing content played some role in attracting subscriptions.[1]  Therefore, the question presented here is whether the evidence sufficiently suggests that the Images at issue generated business, and the apportionment burden would not fall on defendant merely because the Images accompanied non-infringing content on defendant's website and either may have generated sales.  See Thale v. Apple, Inc., 2013 WL 3245170, at *8 (N.D. Cal. June 26, 2013) (distinguishing between the infringing use of a copyrighted photo and the commercial into which it was incorporated, and indicating that plaintiff's burden was to show that the former had led to sales).

---

[1] While "Rieser's work" was the collage incorporating the copyrighted artwork, the opinion was still clear that what constitutes the content that plaintiffs must link to defendants' revenues must be narrowly drawn.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8

Polar Bear, which plaintiff cites in support of its reading of Frank Music, does not actually support plaintiff's position. In Polar Bear, the court found that plaintiff had satisfied its burden as to the Mountain Dew booklet where the evidence indicated that anyone who purchased a Timex watch through the booklet's promotion would have seen the infringing advertisement (featuring a copyrighted still image). Id. at 712. However, the opinion does not indicate that any material in this booklet advertised Timex watches other than the infringing advertisement, or that the advertisement contained any content beyond the terms of the promotion and the infringing image. This suggests there was a strong, direct link between the copyrighted image and every sale from this promotion that distinguished the case from Mackie, where the Symphony's brochure had contained substantial material beyond the infringing artwork that could have attracted subscriptions. See 296 F.3d at 916. Thus, Polar Bear does not clearly contradict or revise the rule from Mackie that plaintiffs must link the infringing content itself to defendants' revenues.[2] Consequently, the question here is whether plaintiffs' evidence suffices to establish a non-speculative causal nexus between the Images themselves and defendant's revenues during the alleged infringement period.

**(ii) Contribution of the Website and Photographs Generally**

The Images at issue were posted on defendant's website (along with ten other photographs of the venue), and thus in order for the Images to have generated indirect profits, customers who booked the venue during the alleged infringement period must have visited defendant's website and must have been influenced by the photographs displayed, there.

Plaintiff proffers the declaration of Apulent owner Joseph Roberts, much of which defendant moves to strike, to establish that defendant's use of photographs to market the venue generated business. In his declaration, Roberts claims to have seen customers respond positively to images from Apulent's prior events, and asserts that prospective customers rely on internet

---

[2] Given that the same Circuit Judge wrote the Mackie and Polar Bear opinions within a year of each other, the Court is particularly disinclined to find a conflict between the two rulings.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9

searches to identify event services providers and possible venues. Dkt. # 22 ¶ 15. Roberts further states that Apulent "consistently found" that its online advertising (including its use of the Images) was sufficient to generate an initial interest in Apulent's services, which often led to direct engagement with Apulent and ultimately to sales. Id. ¶ 24. Finally, Roberts states that customers consider "the experience offered" at a particular venue before deciding whether to purchase event and catering services, id. ¶ 11, and that providing photographs was essential to generating sales leads for Apulent, id. ¶ 16. Defendant argues that the above statements should be stricken because Roberts has not laid the foundation to state that any of the above fell within his personal knowledge and because Roberts is not a qualified expert in the area of marketing. Dkt. # 23 (Def. Reply) at 4-5 n. 2. Defendant further notes that, during his deposition, Roberts conceded that no customer had ever told him that they engaged Apulent because of the Images. Dkt. # 18 (Michelson Decl. Exh. A, Roberts Dep.) 49:8-12.

The Court finds that Roberts is competent to testify that his customers are interested in the aesthetics of a venue and will want to see photographs in making their decision; this would be within his scope of knowledge as the owner of this business. The Court also finds Roberts' statements relevant to the issue of whether defendant's customers viewed and relied on the Images in question. The Court does not find these statements in conflict with Roberts' deposition testimony, in which he only stated that no customer had ever spoken to him about the Images at issue.

However, Roberts' specific statement that Apulent's online advertising sufficed to generate customers' interest in its services, Dkt. # 22 ¶ 24, lacks foundation. While Roberts may have based this conclusion on what he has heard from his customers, Roberts has not stated as such, and the Court will not infer it.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10

**(iii) Contribution of the Images**

Although plaintiff has presented evidence that defendant's website and photographs generated interest in the venue, the Court nevertheless concludes that plaintiff has not satisfied its burden of establishing a causal nexus between the Images and defendant's revenues.

The Court acknowledges that plaintiff's case is stronger than the plaintiff's case in Mackie. In Mackie, it was questionable whether the infringing artwork could have generated subscriber interest; the Mackie court could envision "endless permutations" to account for a subscriber's decision that had "nothing to do with the artwork in question," and the court emphasized that the other materials in the Symphony brochure that could have attracted subscribers were "unrelated to the artwork itself." 296 F.3d at 916. By contrast, plaintiff has proffered competent evidence that defendant's customers who booked the venue were interested in aesthetics, visited defendant's website and reviewed the photographs, there. This makes any of defendants' twelve photographs of the venue a more likely contributor to sales than the Mackie artwork. Nevertheless, plaintiff's evidence is insufficient to support anything other than a guess whether any customer's decision to book the venue was influenced by the two photographs at issue in this action. The Court recognizes that the burden of apportioning what profits were attributable to a defendant's infringement would fall on defendant, see Polar Bear, 384 F.3d at 711, 715; however, a defendant only bears this burden if the causal link between its infringement and its revenues rises above the speculative level, see id. at 711. "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." Id. (citation and quotation marks omitted).

The causal connections in Polar Bear were far clearer and better supported than the one plaintiff attempts to draw in this case. Customers who purchased Timex watches through the promotion must have seen the infringing advertisement and if the infringing image was the only image in the booklet promoting Timex watches there is a strong inference that the infringing content caused the sales. See 384 F.3d at 712 (finding "sufficient circumstantial evidence.").

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11

1  Furthermore, expert testimony and analysis in Polar Bear established the causal link between
2  defendant's infringement and the revenues from trade booth sales.  Id. at 712.  While a damages
3  expert retained by plaintiff in this case asserted that photographs of a venue "have an impact on
4  sales" and are "obviously important" to online advertising for special-event services, plaintiff
5  has provided no concrete evidence linking the two Images to sales.  See Dkt. # 18 (Michelson
6  Decl. Exh. B, Nickerson Report) at 32 (offering "no opinion regarding whether the evidence in
7  this case meets the minimum required proof that the infringement at least partially caused the
8  profits.") (internal quotation marks omitted).[3]

### IV.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment.  Plaintiffs may not recover indirect profits for defendant's alleged infringement.

DATED this 12th day of February, 2015.


Robert S. Lasnik
United States District Judge

---

[3] Defendant's damages expert stated that "At best, the use of the accused photos could potentially be part of generating an initial interest of a potential customer," but further noted that in the absence of concrete evidence linking the Images to a sale, a given customer's interest could have been stimulated by a non-infringing photo. Dkt. # 21-3 (Walters Decl. Exh. C, Voth Report) at 6-7. The expert concluded that "[i]t is too speculative to attribute any customer's booking decision to the alleged infringed photos." Id.

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12